United States District Court
Southern District of Texas
**ENTERED**

January 12, 2026

Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. 5:25-CR-1289 |
| | § | |
| ARIANA GUADALUPE GARCIA | § | |

## ORDER

Pending before the Court is Defendant Ariana Guadalupe Garcia's ("Defendant" or "Ms. Garcia") Motion to Dismiss. (Dkt. 38.) Defendant argues that Counts I and II of the indictment charging her with assault on a federal officer in violation of 18 U.S.C. § 111(a) should be dismissed for violations of her due process right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution. (*Id*. at 1.) For the reasons stated below, Defendant's Motion to Dismiss, (Dkt. 38) is GRANTED.

## BACKGROUND

### A. Factual Background

On July 23, 2025, a criminal complaint was entered against Defendant alleging that she violated 18 U.S.C. § 111. (Dkt. 4.) The Complaint alleges that on July 20, 2025, Ms. Garcia, a U.S. citizen, arrived at the Gateway to the Americas port of entry in Laredo, Texas. (Dkt. 4 at 2.) The Complaint further alleges that from outside the building in a public area, Ms. Garcia attempted to communicate through a window to a minor who was referred to secondary inspection. (*see id*.) She was then allegedly instructed to leave the property due to interfering with an ongoing inspection. (*Id*.) At this point U.S. Customs and Border Protection Officers (CBPO) escorted Ms. Garcia off the property, and during the escort Ms. Garcia is alleged to have pulled out her cell

1 / 12

phone. (*Id*.) The Complaint then states that Ms. Garcia was ordered to put down her cell phone and that Ms. Garcia became aggressive and "began throwing punches at the CBPOs." (*Id*.) Ms. Garcia is alleged to have struck Supervisory CBPO (SCBPO) Erick Valdez on the left shoulder and another CBPO, Jose Gutierrez, in the left ear, "causing a physical injury." (*See Id*.; Dkt. 13.)

**B. Procedural Background**

On August 19, 2025, a federal grand jury returned a two-count indictment against Defendant, with both Counts I and II alleging assault on a Federal Officer by physical contact in violation of 18 U.S.C. § 111. (Dkt. 13.) Ms. Garcia waived arraignment on August 26, 2025. (Dkt. 15.) Subsequently the Court set a deadline of September 8, 2025, for the Defense to file pre-trial motions and a final pre-trial conference was held on November 6, 2025. (*See* Dkt. 14; Min. Entry for Nov. 6, 2025.) During the Final Pre-Trial conference, Defendant announced for trial. (Min. Entry for Nov. 6, 2025.)

On November 5, 2025, Defendant filed a motion for disclosure of personnel records. (Dkt. 20.) During a pre-trial conference held on November 6, 2025, the Court discussed Defendant's Motion for Disclosure of Personnel records with the parties. (Min. Entry for Nov. 6, 2025.) The Parties confirmed to the Court that there are five video recordings related to the incident from cameras positioned in the area. (*Id*.) The Parties also noted that while there is video footage of the moments immediately preceding and following the incident, the camera pointed at the specific location of the alleged incident was not working at the exact moment the incident occurred. (*See id*.; (Min. Entry for Dec. 2, 2025.) The Government informed the Court that a correction has been made to that camera so that it is now operating. (Min. Entry for Nov. 6, 2025.)

On November 10, 2025, a pre-trial hearing was scheduled before the Court, during which the Court addressed the pending Motion for Disclosure of Personnel Records. (Min. Entry for Nov.

10, 2025.) During the hearing the Court requested copies of the five available video recordings that were provided in discovery be made available to the Court, and the Government subsequently submitted the recordings to the Court. (*See id*.) On December 2, 2025, the Court held a motion hearing to further address Defendant's Motion for Disclosure of Personnel Records, during which the Court ordered the disclosure of four disciplinary records for two Government witnesses. (Hrg. on Dec. 2, 2025 at 9:54:15–9:54:20, 10:00:00–10:01:50.)

Additionally, in preparation for trial, the Defense became aware of an incident wherein a CBPO involved in the investigation asked Ms. Garcia to delete recordings from Ms. Garcia's phone that captured her interaction with the CBP officers prior to her arrest. (Dkt. 38 at 2.) On November 12, 2025, the Government filed an advisory notifying the Court and Defense Counsel that additional discovery would be made available to Defendant related to this incident. (*See* Dkt. 31; Dkt. 38 at 2.) The Government provided Defendant with a memorandum dated November 10, 2025, from CBPO Estefany Sanchez wherein CBPO Sanchez admits to having asked Ms. Garcia about the recordings on her phone and to having asked Ms. Garcia to delete the recordings from her phone. (Dkt. 38 at 2–3; *id.*, Attach. 1.)[1]

On December 12, 2025, Defendant filed an Opposed Motion for Leave to file Defendant's Motions Out-of-Time and contemporaneously filed her Motion to Dismiss Indictment for Destruction of Evidence. (*See* Dkts. 37, 38.) On that same date, December 12, 2025, the Court granted Defendant's Motion for Leave to file and ordered the Government to respond to Defendant's Motion to Dismiss by December 29, 2025. (Dkt. 39.) The Court also terminated the Parties' other pending deadlines in light of the Motion to Dismiss. (*Id.*) Over a week after the court

---

[1] The Court will use "Attachment" to refer to sub-filings in accordance with official docket entries. The Court will use the page numbers auto-generated by CM/ECF in citations to the docket entries.

ordered deadline to respond passed, on the evening of January 6, 2026, the Government filed a Motion for Leave to File Response to Defendant's Motion to Dismiss and requested that the Government be allowed to file by January 13, 2026.[2]

## Legal Standard

Federal Rule of Criminal Procedure 12(b)(1) allows a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." A court may rule on a pretrial motion to dismiss an indictment where, as here, the motion presents legal questions that involve undisputed facts. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005), *abrogated on unrelated grounds by United States v. Garcia*, 707 F. App'x 231 (5th Cir. 2017) (unpublished). Thus, in deciding the motion, the Court should "take the allegations of the indictment as true." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (quoting *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)).

## Discussion

Ms. Garcia argues for the Court to dismiss Counts I and II of the Indictment for violations of her due process right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution. (Dkt. 38 at 1.) She argues that the CBPO telling her to delete the recordings of the incident from her phone constitutes destruction of evidence by the Government, in violation

---

[2] The Government filed a Motion for Leave to File Response to Defendant's Motion to Dismiss out of Time on January 6, 2026. (Dkt. 40.) Federal Rule of Criminal Procedure 12(c)(3) states that if a party does not meet a pre-trial motion deadline the motion is untimely, but the court may consider the filing if the party shows good cause. The Government did not provide good cause, as the only reason provided for missing the deadline set by the Court was that the deadline was overlooked. (*See* Dkt. 40.) Where this case has been heavily litigated, the Court has had multiple recent hearings in the case, where the remaining pending deadlines—including a potential trial date—had been terminated in light of the pending Motion to Dismiss, and where the Government was given a reasonable deadline to respond to the Motion to Dismiss, the Court cannot find that the Government overlooking its deadline to respond demonstrates good cause. Accordingly, the Government's Motion for Leave, (Dkt. 40), is DENIED.

of her constitutional rights under *California v. Trombetta*, 467 U.S. 479 (1984) and *Arizona v. Youngblood*, 488 U.S. 51 (1988). (Dkt. 38 at 6–13.)

It is well established that, generally, the government must preserve evidence that may play a significant role in a suspect's defense. *See Youngblood*, 488 U.S. at 57; *Trombetta*, 467 U.S. at 486; *Illinois v. Fisher*, 540 U.S. 544, 547 (2004). However, whether the government's loss or destruction of evidence amounts to a violation of a defendant's due process rights depends, in part, on the materiality of the evidence. *See United States v. McNealy*, 625 F.3d 858, 868 (5th Cir. 2010); *United States v. Howard*, 2005 WL 8157699, at *4 (S.D. Tex. Apr. 5, 2005) (noting that the defendant's due process challenge turns on "import of the lost or destroyed materials"). "Failure to preserve *material exculpatory evidence* violates due process rights irrespective of whether the government acted in good or bad faith," but "failure to preserve merely *potentially useful evidence* does not constitute a denial of due process" unless a defendant is able to show bad faith. *McNealy*, 625 F.3d 858, 868 (emphasis added) (citing *Fisher*, 540 U.S. at 547 and *United States v. Moore*, 452 F.3d 382, 388 (5th Cir.2006)). Thus, destruction or loss of evidence amounts to a due process violation when the evidence is "(1) material and exculpatory or (2) only potentially useful, in combination with a showing of bad faith on the part of the government." *Moore*, 452 F.3d 382, 388 (5th Cir. 2006) (per curiam).

The Court first analyzes whether the evidence destroyed by the Government was material and exculpatory. Next the Court addresses whether, even if the evidence is simply considered potentially useful, the government acted in bad faith by deleting the photographic recordings, in violation of Ms. Garcia's constitutional rights.

### A.  Whether the Evidence was Material and Exculpatory

In *United States v. Webster,* 750 F.2d 307, 333 (5th Cir. 1984), the Fifth Circuit explained that "the mere possibility that evidence might aid the defense does not satisfy the constitutional materiality standard; rather, if the record reveals that 'the chances are extremely low that preserved [evidence] would have been exculpatory,' destruction of that evidence does not render a conviction or sentence fundamentally unfair." (quoting *Trombetta*, 467 U.S. at 489) However, materiality does not require the defendant to show that the omitted evidence would result in an acquittal: "to show a due process violation when the state withholds evidence, a defendant need not prove that his trial necessarily would have had a different outcome; a lack of faith in the result is sufficient." *Moore*, 452 F.3d at 388 n.22 (citing *DiLosa v. Cain,* 279 F.3d 259, 263 (5th Cir.2002)); *see also Bower v. Quarterman*, 497 F.3d 459, 476 (5th Cir. 2007) ("[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.") Evidence is considered material and exculpatory if 1) "it possessed an exculpatory value that was apparent before the evidence was destroyed," and 2) "if the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Binker*, 795 F.2d 1218, 1230 (5th Cir. 1986) (citing *Trombetta*, 467 U.S. at 489).

In this case, the Government admits that it destroyed recordings of the incident that occurred. (*See* Dkt. 38, Attach. 1.) A CBPO submitted a memorandum, disclosed to the Defense during discovery, in which the CBPO describes having asked Defendant to delete the recordings of the incident captured on Defendant's phone. (*See id*.) The CBP officer explains that, immediately following the incident, she conducted a pat down of Ms. Garcia, witnessed by another CBPO. (*See id*.) She then describes the following:

> After pat down was concluded [Ms. Garcia] stated that she was repeatedly asked to leave the premises and refused as she was waiting for someone and that she began to argue with supervisor and other officers on scene and she then started taking pictures of officer at which point she was detained. I then asked her if she still had the pictures to which she voluntarily unlocked her phone and showed to me, which showed Supervisory Customs and Border Protection (SCBPO) Erick Valdez talking midsentence. I then asked her if she could delete them, which she willingly deleted from her folders.

(*Id.*) Ms. Garcia argues that these recordings "would have demonstrated the demeanor of the officer(s), what was happening at the time, what was being said at the time and where the officer(s) hands were positioned." (Dkt. 38 at 7–8.) Moreover, she argues these recordings would have been used to explain the encounter and how close Ms. Garcia and the officers were from each other. (*Id.*)

The Court agrees with Ms. Garcia's argument that the recordings destroyed by the Government were material and exculpatory and that there is a reasonable probability the destroyed evidence would affect the outcome of this case. First, the exculpatory value of the deleted recordings in this case would have been apparent to the CBPO at the time she asked Defendant to delete the evidence. Where an incident had just occurred and Defendant had photographic recordings of the incident, it is evident those recordings would be material in determining what happened during the incident. Moreover, the CBPO was able to view some of the photographic evidence prior to asking Defendant to delete it, meaning she knew that the photographic recordings showed the CBPOs involved in the incident. (*See* Dkt. 38, Attach. 1.) (describing that the photos showed SCBPO Erick Valdez talking midsentence). The CBPO was aware that an incident occurred, and she knew that the photos she asked Ms. Garcia to delete were of the incident, therefore the exculpatory value of the recordings would have been apparent to her.

Second, Ms. Garcia is not able to obtain comparable evidence by other reasonably available means. While video footage exists of each moment immediately preceding and following the

incident, the several minutes in which the alleged assault occurred are not caught on video footage, because the camera that covers that specific angle was not working for those several minutes while the alleged assault occurred. (*See* Min. Entry for Nov. 6, 2025; *see also* Dkt. 38 at 11.) The photographic recordings of the incident from Ms. Garcia's phone would have provided objective evidence of the incident, including the demeanor and position of those involved during the alleged assault. Without the photographic recordings of the alleged assault, the case principally turns on the disputed testimony of the CBPOs involved in the incident. (*See* Dkts. 26, 27, 28, 29, 30). The kind of objective, impartial evidence destroyed by the Government cannot be replicated in testimony or otherwise.

Thus, there is more than a mere possibility that the evidence destroyed would have aided the Defense, rather the Defense has demonstrated that the destruction of the evidence in this case prejudices the Defense and undermines confidence in the outcome of a trial. *See Webster,* 750 F.2d 307, 333–34 (5th Cir. 1984) (quoting *Trombetta*, 467 U.S. at 489); *see also Bower*, 497 F.3d at 476 (5th Cir. 2007)*.* As the Defense argues, the photographic recordings would have supported Ms. Garcia's version of events providing potential proof of the distance between the Defendant and the CBPOs immediately preceding or during the alleged assault. (Dkt. 38 at 8.) Ms. Garcia further argues that the recordings would have established "reasonable doubt as common sense dictates, she would not be recording an event that would inculpate her in a crime." (*Id*. at 8–9.) Moreover, "because of CBP Officers' misconduct, [Ms. Garcia] is precluded from presenting physical evidence which would have supported her version of events at trial, would have allowed the jury to inspect the physical evidence, and would have told its own story." (*Id*. at 11.) Accordingly, because the evidence destroyed was material to the Defense, the destruction of

evidence by the Government amounts to a constitutional due process violation, irrespective of whether it was done in bad faith.

### B.  Whether the Evidence was Potentially Useful and Destroyed in Bad Faith

Defendant also argues that, even if the photographic recordings are not considered material and exculpatory, they are at the very least potentially useful evidence, and this coupled with the bad faith destruction of the records violates Ms. Garcia's constitutional rights. (Dkt. 38 at 6, 12.)

Evidence is potentially exculpatory where its exculpatory value is undetermined at the time it was destroyed but "may be 'potentially useful' to the defense[.]" *United States v. Murray*, 484 F. Supp. 3d 334, 341 (E.D. La. 2020) (citations omitted). In *McNealy*, the Fifth Circuit analyzed whether a defendant's constitutional rights were violated when the government destroyed a defendant's computer after duplicating the three hard drives it contained. 625 F.3d at 869. The defendant argued that the government conduct violated his constitutional rights because "the mishandling of the defective hard drive prohibited him from using 'exculpatory evidence potentially available on it.'" *Id*. Consequently, the defendant was "forced to rely on the Government's claims that the two remaining hard drive copies were accurate[.]" *Id.* The Fifth Circuit found that the destroyed computer "should be considered 'potentially useful evidence' rather than 'material exculpatory evidence'" because the defendant did "not argue that he knows of any potentially exculpatory evidence, nor does he identify what evidence might be contained in the partially defective hard drive." *Id.* Accordingly, the Fifth Circuit analyzed the defendant's due process claim related to the Government's destruction of evidence under the "bad-faith standard." *See id.*

Here, the Defense identified what was contained in the destroyed evidence, indeed as discussed above, the evidence destroyed by the Government is known to have included pictures of

the CBPOs involved in the incident, among potentially additional recordings of the incident. (*See* Dkt. 38, Attach. 1.) However, to the extent that the number of photographic recordings and what was contained on each of them is unknown, the photographic evidence destroyed by the Government, if not material and exculpatory, is certainly potentially useful to the defense. For the reasons discussed above, including that it is apparent the photographic evidence provided a recording of the moments immediately preceding and potentially during the alleged assault, the destroyed evidence would have been useful in supporting the Defense's version of events. (*Id.*)

As noted above, a defendant's due process rights are violated when the government, in bad faith, fails to preserve potentially useful evidence. *See Youngblood*, 488 U.S. at 57. The Supreme Court has also explained that "the presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 56 (citation omitted). If law enforcement knows that the evidence may be of value, then destruction of such evidence is in bad faith. Here, the CBPO knew what was contained on the recordings prior to asking Defendant to delete them.

Moreover, the Court finds the Fifth Circuit's analysis in *McNealy* informative in guiding how to discern whether the Government acted in bad faith. The Fifth Circuit noted that where "there is no evidence that [the Government] intended to destroy the evidence in order to impede McNealy's defense" and "[t]he original computer was destroyed as a result of miscommunication between divisions of the federal government," the government cannot be said to have destroyed the evidence in bad faith. *McNealy*, 625 F.3d at 870. The Fifth Circuit further noted that the district court found that it was unclear exactly how the evidence was destroyed because "there were several arms of the federal government working on this case and many other cases" and that it would appear that it was "either misplaced or lost." *Id.* at 869. Importantly, the district court had found

"[t]here's no evidence here that this evidence was destroyed purposefully." *Id*. at 869; *see also Moore*, 452 F.3d at 388–89 (finding that the destruction of tape recordings of conversations with the defendant was not bad faith where the destruction was pursuant to standard procedure).

Here, it is clear what happened, and it is clear the Government purposefully destroyed the evidence. The CBPO who asked Defendant to delete the photos viewed the photographic recordings before asking Defendant to delete the recordings, meaning she knew at least some of what the photographic recordings included. (*See* Dkt. 38, Attach. 1.) The Government did not just passively fail to preserve the evidence, it actively ensured that the photographic recordings were deleted. Moreover, the CBPO ensured that the recordings could not be retrieved by asking Ms. Garcia to "also delete them from the 'recently deleted' files." (Dkt. 38 at 10.) The order to delete the photographic recordings of the incident was not a negligent act that resulted in the destruction of evidence; it was a purposeful one with the intent that the photographs no longer be accessible to Defendant. The Court finds that this constitutes bad faith on the part of the Government.

Accordingly, even if the evidence that was destroyed is only considered potentially useful to the Defense, Ms. Garcia's due process rights were violated by the Government's bad faith destruction of the photographic evidence in this case.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the evidence destroyed by the Government was material and exculpatory, and therefore the destruction of the evidence violated Ms. Garcia's constitutional rights under *Youngblood* and *Trombetta*. Moreover, even if the evidence is viewed as potentially useful as opposed to exculpatory, the Government acted in bad faith in destroying the evidence, further demonstrating that Ms. Garcia's constitutional rights have been violated.

Defendant's Motion to Dismiss, (Dkt. 38), is GRANTED. The Government's Motion for Leave, (Dkt. 40), is DENIED for lack of good cause.

SIGNED this January 12, 2026.

Diana Saldaña
United States District Judge